

# The Attorney General of Texas

**JIM MATTOX**
Attorney General

Supreme Court Building
P. O. Box 12548
Austin, TX. 78711- 2548
512/475-2501
Telex 910/874-1367
Telecopier 512/475-0266

714 Jackson, Suite 700
Dallas, TX. 75202-4506
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905-2793
915/533-3484

1001 Texas, Suite 700
Houston, TX. 77002-3111
713/223-5886

806 Broadway, Suite 312
Lubbock, TX. 79401-3479
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501-1685
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205-2797
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

October 18, 1985

Honorable Mike Driscoll
Harris County Attorney
1001 Preston, Suite 634
Houston, Texas    77002

Opinion No. JM-359

Re: Whether a county clerk may issue a marriage license without parental consent if either applicant is under 18 years of age and has previously been married

Dear Mr. Driscoll:

You ask the following question regarding marriage licenses:

> May the county clerk issue a marriage license without parental consent, or a court order, if either applicant is under age eighteen, has been married, and is no longer married?

The following provision sets out the age requirement for applicants for a marriage license:

> Except with parental consent as prescribed by Section 1.52 of this code or with a court order as prescribed by Section 1.53 of this code, the county clerk shall not issue a marriage license if either applicant is under 18 years of age.

Family Code §1.51. By its terms section 1.51 is an absolute prohibition against issuance of a marriage license to someone under 18 who has not obtained either parental consent or a court order. But the Family Code also contains the following provision:

> <u>Except as expressly provided by statute or by the constitution,</u> every person who has been married in accordance with the law of this state, regardless of age, has the power and capacity of an adult, including the capacity to contract. (Emphasis added).

Family Code §4.03. Because section 4.03 applies to someone who "has been married," the emancipating effect of marriage survives the marriage. The question, then, is whether section 4.03 exempts someone

who has been married from the age requirement of section 1.51.  In our opinion it does not.

Our conclusion is based on the plain language of sections 1.51 and 4.03.  Section 4.03 expressly does not affect constitutional and statutory age requirements.  This limitation on the emancipating effect of section 4.03 "take[s] into account the many statutes that impose specific age requirements as a condition to performing legally significant actions."  E. L. Smith, 5 Texas Tech Law Rev. 489, 492-93 (1974).  The quoted language is in reference to a statute that sets out the capacity of a minor whose disabilities have been removed by court order.  Family Code §31.07.  The language of section 31.07 is essentially the same as the language of section 4.03:

> <u>Except for specific constitutional and statutory age requirements</u>, a minor whose disabilities are removed for general purposes has the power and capacity of an adult, including the capacity to contract.  (Emphasis added).

Family Code §31.  The predecessor to section 31.07 made emancipated minors "for all legal purposes, of full age, except as to the right to vote."  Acts 1888, p. 61.  A statute repealed in 1969 made married women "of full age."  V.T.C.S. art. 4625 (repealed).  Both statutes gave rise to questions about whether specific statutory age requirements applied to emancipated minors and married women under the age specified.  See Attorney General Opinions O-2918 (1940); V-77 (1947); V-849 (1949); S-20 (1953).  Sections 31.07 and 1.51 eliminated the uncertainty that gave rise to those opinions.  Thus, because section 1.51 contains a specific age requirement and not a reference to "minors" or "infants," section 4.03 does not change the effect of section 1.51.

A 1981 attorney general's opinion provides further support for our conclusion.  Attorney General Opinion MW-354 (1981).  The question in that opinion was whether a married person under the age of 18 could receive benefits that were "payable until the child reaches eighteen."  The opinion considered whether that language should be read to mean that benefits were payable to "minors."  If that were the correct reading of the statute, benefits would not be payable to a married person under 18 because a married person is not a minor, regardless of age.  Probate Code §3(t) (excludes persons who have been married from the definition of minor); see also Pittman v. Time Securities, 301 S.W.2d 521 (Tex. Civ. App. - San Antonio 1957, no writ) (holding that the section 3(t) definition of "minor" is not restricted to the Probate Code).  Without even mentioning section 1.51, this office rejected that reading of the statute and determined that the age requirement in the statute should be taken literally.  In other words, even though 18 is now the age of majority in Texas, a statute that

distinguishes between persons under 18 and persons 18 and older is not to be read as a distinction between minors and persons who have reached the age of majority.

Although the language of sections 1.51 and 4.03 admits of no other conclusion, a strict reading is somewhat dissatisfying because of the irony that a child[1] who has acquired certain capacities by getting married lacks the capacity to consent to a marriage. Therefore, we think it is important to buttress our conclusion by examining the history of the law of infancy and the policy considerations behind section 4.03.

The premise underlying the common law of infancy and various minimum age requirements is that children lack the requisite faculties to participate in certain activities and to make certain decisions. See R.H. Tyler, Commentaries on the Law of Infancy, §1, at 33 (1882). The intended effect of such laws is "to prevent, as far as possible, the evils which would arise from the imbecility and inexperience to which every man is subject on his entrance into the world."  P. Bingham, The Law of Infancy and Coverture, §1, at 1 (1849).

At common law any person under the age of 21 was an infant and was legally incompetent for various purposes.  Probably the most significant disability of infancy, and certainly the most widely discussed, was an infant's general incompetence to make binding contracts.  See Tyler, supra, chs. VII-VIII.  Apparently the capacity to consent to marriage was thought to ripen much earlier than the capacity to consent to other contracts, however, because the minimum age at which a male could give binding consent to a marriage was 14, and the minimum age for females was 12.  G. W. Field, The Legal Relations of Infants, §§1, 2, 21 (1888).

A valid marriage by infants at common law did not operate to relieve them of their disabilities.  See Burr v. Wilson, 18 Tex. R. 368, 371-77 (1856).  In Burr the court held that even though certain statutes emancipated married infant men[2] for certain purposes, such statutes did not extinguish the disabilities of infancy generally.

---

1.  In this opinion we shall use the word "child" to refer to someone under 18.  We do so in order to avoid terms with legal meanings such as "minor" and to avoid the cumbersome phrase "a person under 18."

2.  The Burr court pointed out that its decision did not apply to married women because married women were, by statute, "of full age." Burr at 377.  The release of married women from the disabilities of infancy was an emancipation in legal theory only, however, because marriage brought a woman into a state of coverture, which was a more disabling state than infancy.  Tyler, supra, §§207, 208.

Id. at 376. Consequently, the court held that, except to the extent that statutes provided specific exceptions to a married infant's incapacity to contract, a married infant remained incompetent to make binding contracts.

Although Burr describes a married infant's incompetence to contract as a "privilege" to disavow contracts, Burr at 377, the inability to contract would no doubt be an inconvenience to married infants living apart from their parents. For that reason the common law was not rigid in its treatment of infants. It permitted infants to make valid contracts for necessaries. Tyler, supra, §56. Liability for necessaries, however, depended on an infant's circumstances:

> The question of necessaries is governed by the real circumstances of the infant, and not by what his situation may appear to be. An infant when at home under the care of his father, and supported by him, cannot be made liable for necessaries. If he could be made liable, the father would be deprived of the right of exercising his discretion as to the manner and degree of his support.

Id. §58 at 100-101. Thus, a married infant living apart from his parents would be able to make some binding contracts. But anyone who contracted with an infant was bound to "inquire and ascertain the real circumstances of the infant" and to determine whether the infant could bind himself in contract. Id. at 101. Thus, the uncertainty of whether a contract was a contract for necessaries could make an infant's legal competency to enter into such contracts of little practical value.

Under current Texas statutory law a person reaches his majority at age 18, earlier than at common law. V.T.C.S. art. 5923(b). The age of consent for marriage is now also 18, considerably older than at common law. The current law reflects a legislative judgment that persons under 18 do not have the wisdom necessary to make decisions about marriage, just as they do not have the wisdom to enter into other contracts. Nonetheless, the law permits exceptions to the rule that persons under 18 should not marry. See Family Code §1.52 (provides for parental consent to marriage of underage applicant); id. §1.53 (provides for court order to authorize marriage of underage applicant). These provisions allow for the fact that particular circumstances in favor of marriage sometimes offset a child's immaturity.

As we noted earlier, the burdens of contractual incapacity frequently outweigh the benefits for married children. Although the common law rule regarding contracts for necessaries relieved that

burden somewhat, section 4.03 eliminates the uncertainty created by that rule and gives a person who has been married the capacity of an adult, including the capacity to contract. Family Code §4.03.

Although section 4.03 is a significant revision of the common law, it is not a rejection of the common law rule that marriage does not end infancy for all purposes. Under section 4.03 married children are still subject to constitutional and statutory provisions that set specific age requirements.

The limited emancipation provided for in section 4.03 is an attempt to make the best of situations that depart from the ideal. As we said before, because common law incapacity was intended to benefit children, it makes sense to end the incapacity when it is more of a burden than a benefit to a child. That reasoning does not necessarily apply to other minimum age requirements. For example, the minimum voting age and the minimum age for holding various public positions protect the rest of us from the "imbecility" of youth. Because the circumstances that lead parents or judges to authorize marriages are not necessarily indicative of premature wisdom, the marriage of a child does nothing to affect the considerations pertinent to the determination of the minimum voting age or the minimum age for holding certain positions.

Similarly, the circumstances that lead parents or judges to authorize one marriage do not necessarily indicate that an underage applicant is better prepared for marriage than other members of his age group. Indeed, consent to an early marriage is often forthcoming despite an applicant's immaturity rather than because of it.

Thus, in general, the justification for removing the contractual incapacity and some other disabilities of minority does not justify removing the minimum age for consent to marriage. We can, nonetheless, imagine circumstances in which the second marriage of a child would be desirable. The law must assume that in such circumstances parents and judges will exercise their authority to consent to marriage with the interests of the child in mind.

At common law marriage did not remove the disabilities of infancy, and Texas has not rejected this rule entirely. Although under Texas law marriage removes some disabilities of infancy, it expressly does not affect age requirements fixed by the constitution or by statute. Texas law sets the age of consent to marriage at 18. Family Code §1.51. Therefore, clerks may not issue a marriage license to any person under 18, whether or not that person has been married before, unless the person seeking the license has parental consent or the consent of a judge. Family Code §§1.52, 1.53.

## S U M M A R Y

Clerks may not issue a marriage license to any person under 18, whether or not that person has been married before, unless the person seeking the license has parental consent or the consent of a judge.  Family Code §§1.52, 1.53.

Very truly yours

J I M   M A T T O X
Attorney General of Texas

TOM GREEN
First Assistant Attorney General

DAVID R. RICHARDS
Executive Assistant Attorney General

ROBERT GRAY
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Sarah Woelk
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Rick Gilpin, Chairman
Susan Garrison
Tony Guillory
Jim Moellinger
Jennifer Riggs
Nancy Sutton
Sarah Woelk